GRIMES, Justice.
We review Envirogenics Systems Co. v. City of Cape Coral, 510 So.2d 934 (Fla. 2d DCA 1987), because of conflict with Wood-Hopkins Contracting Co. v. Roger J. Au & Son, Inc., 354 So.2d 446 (Fla. 1st DCA 1978). We have jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution.
This case involves the disqualification of two bidders on the construction and design of a reverse osmosis water treatment system for the City of Cape Coral. The sole function of this facility is to produce drinking water. Both petitioners were prequali-fied as bidders and found to have met the specialized requirements for bidders on the project. However, the city later disqualified the petitioners as bidders because neither was certified as a general contractor under chapter 489, Florida Statutes (1987). The petitioners brought separate suits for declaratory judgment, contending that they were expressly exempted from the licensing requirements of chapter 489 by virtue of section 489.103(1), Florida Statutes (1987). The trial court held that the petitioners were not exempt from the licensing requirements and entered judgments for the city. In a consolidated appeal, the district court of appeal affirmed the judgments, acknowledging the possibility of conflict with Wood-Hopkins.
Chapter 489 provides for the licensing of contractors. Section 489.103 states:
489.103 Exemptions — This act does not apply to:
(1) Contractors in work on bridges, roads, streets, highways, railroads, or utilities and services incidental thereto.
Petitioners argue that the plain reading of subsection (1) exempts from the chapter’s licensing requirements contractors engaged in work on utilities. The city does not dispute that its project is a utility, but rather contends that this exemption only applies to utilities and services which are incidental to the work on bridges, roads, streets, highways and railroads. The city *280 calls attention to the fact that the first five categories of work involve projects related to transportation. Thus, it suggests that the reference to utilities pertains only to utility work that is ancillary to a transportation project, such as building a sewer under a street.
The district court of appeal accepted the city’s contention that the phrase “or utilities and services incidental thereto” modified the subject matter of the first part of the exemption, that is, “work on bridges, roads, streets, highways, railroads.” The court buttressed its conclusion by observing that if the legislature intended section 489.103(1) to exempt work on utilities, it would have been unnecessary to include as an exception section 489.103(5) which reads as follows:
(5) Public utilities on construction, maintenance, and development work performed by their employees, which work is incidental to their business.
With all due respect, we cannot agree with the construction placed on this statute by the court below. In the first place, a grammatical construction of subsection (1) leads to but one conclusion. In order for the words “or utilities and services incidental thereto” to modify the words “contractors in work on bridges, roads, streets, highways, railroads ...,” either the word “and” or the word “or” would have to be inserted between the words “highways” and “railroads.” Any thought that the legislature simply used poor grammar is belied by the fact that throughout section 489.103, groupings of items in one class or category are separated with a comma except the last element of the group, which is separated by “, or.” Kg., §§ 489.103(8), 489.103(9), 489.103(9)(a), 489.103(11). This punctuation is consistent with a reading of subsection (1) which places “bridges, roads, streets, highways, or utilities” in the same group.
We do not believe our interpretation renders subsection (5) meaningless. The word “utilities” in subsection (1) refers to a type of facility, whereas the term “public utility” in subsection (5) refers to a type of business entity. Subsection (1) exempts contractors as defined in section 489.105(3) from doing work on utilities. Subsection (5) refers to work done by a public utility and performed by its employees which is incidental to its business. The work performed by the employees of a public utility is not necessarily utilities work but is work incidental to the business of the utility. For example, if a public utility, through its employees, were to build a cafeteria for its employees, it would not be exempt under subsection (1) but would be exempt under subsection (5). While the two subsections substantially overlap, there are circumstances where each has an independent sphere of operation.
In the Wood-Hopkins case, Roger Au & Son was the low bidder on a thermal discharge unit to be built for the Jacksonville Electric Authority. The JEA staff recommended that the Au bid be rejected and the contract be awarded to Wood-Hopkins, the next lowest bidder. One of the two grounds for rejection was that Au was not a certificate holder under chapter 468 (now chapter 489). Au obtained a judgment requiring that JEA award the contract to Au, even though it was not licensed as a general contractor. The First District Court of Appeal affirmed. While the bulk of that court’s opinion dealt with the remedy sought by Au and the significance of a pipe design error made by Au’s subcontractor, the court did address the licensing problem in a footnote by saying:
The bid documents require registration “in accordance with Chapter 468” of the Florida Statutes. Florida Statutes § 468.114, however, expressly exempts “contractors in work on ... utilities and services incidental thereto” from registration.
354 So.2d 446, 448 n. 2 (emphasis in original). Section 468.114, Florida Statutes (1977), contained the same wording now found in section 489.103(1).
R. Leiby, Florida Construction Law Manual § 16.03 (1981), construes section 489.103(1) in the same manner:
Before a state, county, or municipal contract is let for construction, improvement, remodeling, or repair, the contract *281 ing officer is required to determine that the contractor is either registered or certified with the state. However, contractors working on bridges, roads, streets, highways, railroads, or utilities need not be licensed. Work performed by the employees of the state, county, municipality, or public utility need not be licensed when working under such employment.
(Footnotes omitted.) Cf 1968 Op. Att’y Gen. Fla. (unpublished opinion to Florida Construction Industry Licensing Board dated December 6, 1968), “[I]t would appear that a sewage treatment plant would come within the terms ‘utilities and services incidental thereto’ as contemplated by the legislature when they enacted section 468.-114(1), Florida Statutes.”
We quash the opinion of the district court of appeal and remand the case for further proceedings.
It is so ordered.
McDonald, C.J., and OVERTON, EHRLICH, SHAW, BARKETT and KOGAN, JJ., concur.